MEMORANDUM **
Shao Qun Feng (“Feng”) appeals from the BIA’s decision denying her application for asylum. We have jurisdiction under 8 U.S.C. § 1252, and we reverse.
The Board of Immigration Appeals (“BIA”) conducted its own review of the evidence and law in this case. Accordingly, our review “‘is limited to the BIA’s decision, except to the extent the Immigration Judge’s (“IJ’s”) opinion is expressly adopted.’ ” Hosseini v. Gonzales, 471 F.3d 953, 957 (9th Cir.2006) (quoting Cordon-Garcia v. INS, 204 F.3d 985, 990 (9th Cir.2000)). We review an IJ’s credibility determination for substantial evidence. Malkandi v. Holder, 576 F.3d 906, 908 (9th Cir.2009).
A trier of fact must consider “the totality of the circumstances, and all relevant factors,” in making a credibility determination. 8 U.S.C. § 1158(b)(l)(B)(iii). Here, the IJ’s adverse credibility determination was based entirely on inconsistencies between the English-language declaration attached to the first asylum application and Feng’s in-court testimony. That first asylum application should not have been accepted into evidence by the IJ at Feng’s merits hearing because the statements it contained cannot be reliably attributed to Feng.
There is very little evidence that the attorney who submitted the first asylum application was authorized by Feng to do so. Feng was apprehended off the coast of Puerto Rico in a boat with twenty-four other Chinese citizens. While she was in detention in Puerto Rico, her family hired an attorney to represent her. She spoke to the attorney’s Mandarin-speaking assistant on two occasions, for fifteen minutes each time, but testified that she never saw or spoke with the actual attorney. The IJ in Washington state had no record of any prior attorney representing Feng, and no other attorney filed a formal entry of appearance on her case. See 8 C.F.R. § 1003.17(a) (“In any proceeding before an Immigration Judge in which the alien is represented, the attorney ... shall file a Notice of Appearance....”). Feng testified that she had no knowledge that the first attorney filed anything on her behalf. There was insufficient evidence from which the court could conclude that this first attorney was authorized to represent Feng.
Generally, “[t]he applicant’s signature establishes a presumption that the applicant is aware of the contents of the application.” 8 C.F.R. § 208.3(c)(2). That presumption is not triggered here. Feng explained at her merits hearing that while she was detained in Puerto Rico, only the signature page of the first asylum application was sent to her for her signature. More importantly, the signature page, as with the rest of the asylum application, is in English. There is no evidence in the record indicating that Feng speaks or reads English. At oral argument the government agreed that Feng does not speak or read English. There is therefore no presumption that Feng was aware of the contents of that first application.
Furthermore, “faulty or unreliable translations can undermine the evidence *710 on which an adverse credibility determination is based.” He v. Ashcroft, 328 F.3d 593, 597 (9th Cir.2003) (citing Balasubramanrim v. INS, 143 F.3d 157, 162-64 (3d Cir.1998)). It is undisputed that Feng speaks Cantonese and not Mandarin, the language spoken by the first attorney’s assistant. The difference between these languages is significant enough that the first IJ before whom Feng appeared insured that Feng received a Cantonese and not a Mandarin interpreter. See Richard Warren Perry, The Logic of the Modem Nation-State and the Legal Construction of Native American Tribal Identity, 28 Ind. L.Rev. 547, 568 n. 105 (1995) (noting that spoken Cantonese and Mandarin are not for the most part mutually intelligible); Cindy Collins, Guests, Not Strangers ... Refining the Inner ‘Ear’ to Strengthen Global Client Ties, 18 No. 20 Of Counsel 14, 16 (“Chinese characters are the same in Mandarin and Cantonese but the pronunciations are radically different, depending on what part of the country the speaker is from.”). The first asylum application was not sufficiently reliable because there is nothing to establish that Feng understood the language of the attorney’s assistant.
The fact that some questions in the first asylum application were accurately answered does not affect our decision. The questions which were accurately answered were simple and perfunctory, including dates, locations and occupations, which are easier to translate. See Singh v. INS, 292 F.3d 1017, 1022 (9th Cir.2002) (holding that where petitioner did not speak the same language of his translator, the resulting translated statement which included accurate answers to some perfunctory questions “lacked sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination”).[1]
Without the first asylum application, which never should have been admitted, substantial evidence does not support the IT’s adverse credibility finding. Feng testified consistently with the other record evidence that she suffered two forced abortions. The law is clear that suffering a forced abortion as part of a coercive population control measure constitutes past persecution. 8 U.S.C. § 1101(a)(42). The IJ agreed that, if Feng were considered credible, “she would have established past persecution and therefore would be granted asylum.”
CONCLUSION
Substantial evidence does not support the adverse credibility finding in this case. We reverse and remand to BIA for further proceedings on the merits of Feng’s asylum application, excising the first, tainted asylum application from the evidence.[2]
REVERSED and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. While the Singh court considered the reliability of statements made in an airport interview and not an asylum application, we believe that the Singh court’s attention to the language difficulties experienced by the petitioner in that case to be Icey. The dissent is correct that the court in Singh examined other factors which buttressed the court's conclusion that the short airport interview conducted in a language the petitioner did not understand lacked "sufficient indicia of reliability and accuracy on its own to constitute substantial evidence supporting an adverse credibility determination.” Id. at 1024. The dissent relies upon these other factors to distinguish this case from Singh. The Singh court's "principal concern,” however, was how the language barriers undermined its confidence in the accuracy of the interview statements. Id. at 1022.

. Because we hold that substantial evidence did not support the IJ's adverse credibility and reverse on that basis, we do not reach the issue of Feng’s claim of ineffective assistance of counsel.